OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, AFL-CIO, LOCAL 7-629, ET AL., APPELLANTS, *v.* RMI COMPANY, APPELLEE.

(No. 1294—Decided October 1, 1987.)

CHRISTLEY, J. This is an appeal from a ruling of the common pleas court that affirmed an arbitration award that upheld the dismissal of plaintiff-appellant Heinonen from his employment.

On January 27, 1982, appellant Wallace Heinonen, Jr., was injured on the job. The Bureau of Workers' Compensation awarded appellant temporary total disability benefits from January 27, 1982 until February 27, 1983. During that interim, he was terminated by his employer on July 1, 1982, for failure to report to work after termination of a leave of absence.

The following communications and events transpired prior to appellant's termination:

On February 17, 1982, the Bureau of Workers' Compensation Form C-84 was submitted listing an estimated date of March 1, 1982, as the time when appellant could return to do light work. No return to work order was issued by the company. On April 1, 1982, a second Form C-84 was sent to the company with an estimated date of return of May 6, 1982. On April 6, 1982, appellant underwent surgery for decompression of the ulnar nerve. No return to work order was issued by the company. A third Form C-84, dated June 2, 1982, was sent to the company with an estimated return date of June 30, 1982.

On June 25, 1982, the appellant saw the company physician at the request of the company after it had received the *estimated* date of June 30, 1982. Apparently as a result of the company doctor's report, for the first time appellee ordered appellant to report to work for light duty on June 29, 1982.

On June 28, 1982, there was a phone call between appellant and a company representative at which time the appellant told the supervisor he would not report to work as scheduled because he did not feel he had been released to work by his own physician.

On June 29, 1982, appellant did not report for work.

On July 12, 1982, the appellee sent appellant a letter as follows:

"This is to inform you that as of July 1, 1982, you are in violation of Section 8.21, paragraph (c) of the Labor Agreement which states:

" 'Section 8.21:

" 'Seniority Shall Be Lost And Employment Rights Terminated When:

" '* * *

" '(c) An employee fails to report to work on his first scheduled work day after termination of a leave of absence or vacation without proper notice to and authorization from the Company, except that failure to report is for just cause supported by the employee.'

"We have in our possession a statement from your doctor (Doctor Rehmatullah) that you may return to light work on June 30, 1982. You and I had a telephone conversation on June 28, 1982, during which I informed you that we had such work available and I told you that you were scheduled to report for such work. You informed me that you would not report and you have not. Unless you can justify your action by July 16, 1982, your employment will be terminated effective July 1, 1982."

In response, appellant's doctor supplied three separate statements to the company. On July 14, he wrote:

"Patient to be seen on 7-26-82. Following evaluation at that time, return to work determination will be made."

On July 15, the physician wrote the following:

"To Whom It May Concern:

"Return to work date void if dated before 7-14-82. Determination will be made 7-26-82."

The third communication was dated July 16, 1982, and read as follows:

"It is my understanding that a confusion exists regarding *the return to work date* on my patient, Heinonen, Wallace D.

"Mr. Heinonen has been under my care since 1-27-82. Since then he has been temporarily totally disabled. He is not released for work.

"His next appointment to see me is on 7-26-82." (Emphasis *sic.*)

In response, in a letter dated July 28 to the chairman of appellant union, the company gave the following reason for Heinonen's termination:

"The letter received by the Company on July 19, 1982 from his doctor

has not yet satisfactorily explained why Mr. Heinonen did not report for the modified work made available to him by the Company.

"Since there has not been an explanation which justifies his action, Mr. Heinonen is considered to be terminated effective July 1, 1982, as was specified in the letter of July 12, 1982."

Subsequently, a grievance was filed by the union and the matter was submitted to binding arbitration under the terms of the union agreement.

The arbitrator upheld the discharge, finding in part that:

"It must further be stated that this opinion is based solely upon the terms of the Agreement between the parties and the expectations arising from such Agreement. *While there is nothing in the opinion which is inconsistent with Workmen's Compensation procedures,* this decision is reached upon an analysis of facts pertinent to the grievant's return to work on June 30, 1982.

"In the opinion of the arbitrator, the company had reasonably established June 29, 1982 as the final day of the grievant's *leave of absence.* Furthermore, this date had not been extended by proper notification and authorization of the company. Finally, the grievant failed to demonstrate that he had just cause not to report to work as scheduled. Thus, the company properly terminated the grievant upon his failure to report to work on June 30, 1982." (Emphasis added.)

Appellants then filed their application and motion for vacation of arbitration award in the common pleas court. Appellee filed its answer along with its application to reduce the arbitration award to judgment. Appellants thereafter filed an answer to appellee's application.

Each party filed a motion for summary judgment and the trial court found for appellee, affirming the arbitration award.

At oral argument on appeal the issue was raised as to whether this matter was properly submitted for arbitration under the grievance procedures found in the collective bargaining agreement.

In light of *Balyint* v. *Arkansas Best Freight System, Inc.* (1985), 18 Ohio St. 3d 126, 18 OBR 188, 480 N.E. 2d 417, the choice was appellant's.

"Thus, to the extent that appellees' present common-law action overlaps a claim under R.C. 4123.90, appellees are free to select the remedy best calculated to afford the greatest recovery." *Id.* at 130, 18 OBR at 191, 480 N.E. 2d at 420.

It must be noted that appellant's cause of action for wrongful discharge is ancillary to the merits of appellant's workers' compensation claim. Therefore, it is clear that the utilization of the collective bargaining provision for binding arbitration in this matter is justified under the facts of this case.

For their first two assignments of error, appellants state:

"The Court of Common Pleas erred in holding that the award of the arbitrator which sustained the discharge of plaintiff Heinonen, based upon an inapplicable provision of the collective bargaining agreement, should not be vacated."

"The Court of Common Pleas erred in holding that the award of the arbitrator, which sustained the discharge of plaintiff Heinonen for not reporting to work when he was, in fact, temporarily and totally disabled, should not be vacated."

These two assignments of error are essentially the same; therefore, they will be treated together. Both have merit. The finding that appellant Heinonen was on a *leave of absence* is critical to appellee's case because that status was the basis for appellant's discharge under Section 8.21 of the Collective Bargaining Agreement.

The arbitrator states in his deci-

sion that "the point of contention between the parties is whether or not the grievant was properly scheduled to return to work by June 30, 1982. Underlining this issue are two supplemental questions. First, whether or not the *leave of absence* granted to the grievant had been extended through proper notice to and authorization from the company. Second, whether the grievant had demonstrated just cause not to report to work." (Emphasis added.)

Appellants correctly argue that the phrase "leave of absence" as used in Section 8.21 cannot be applied to "any absence" as ruled by the arbitrator. Appellants' position is supported by the fact that a "leave of absence" is specifically defined in Section 17.1 of the Collective Bargaining Agreement.

Section 17.1 of the Collective Bargaining Agreement reads as follows:

"An employee, upon written application *on a form prescribed by the company* may be granted a *leave of absence* without pay and without loss of seniority for a period not exceeding three (3) months, where production requirements permit, or upon good cause being shown. A leave of absence *extension may be granted in writing* upon written request where deemed justifiable * * *.

"The *Union will be given written notification* of all leaves of absence granted in accordance with this section." (Emphasis added.)

Section 8.21 provides that seniority shall be lost and employment rights terminated when:

"(c) An employee fails to report to work on his first scheduled work day after termination of a *leave of absence* or vacation without proper notice to and authorization from the company, except that failure to report is for just cause supported by the employee." (Emphasis added.)

Throughout the collective bargaining agreement there are numerous references to the various kinds of absences which may be incurred by an employee. The absences are never referred to collectively as "leave of absence," but are always designated by a specific title. For example:

Section 5.5 sets out the following distinction between the terms relating to absences: "* * * an employee returning from an *extended illness* or *injury* of more than two weeks, * * * and an employee returning from a *leave of absence* of thirty (30) calendar days or more." (Emphasis added.)

Section 7.8 speaks of "an employee absent because of being on *vacation* or *illness* or *injury compensable under the Workmen's Compensation Act* of Ohio will be considered as having had *earnings* during each week's absence for the purpose of this section." (Emphasis added.) Under Section 17.1, a "leave of absence" is *without* pay.

Under Section 8.22(B), entitled "Seniority," there is a differentiation as follows: "An employee who has accepted a temporary assignment to a job outside the bargaining unit to provide coverage for *illness, injury, leave of absence* or *vacation relief* of a permanent salaried employee shall retain and accumulate plant, department and group seniority * * *." (Emphasis added.)

It is clear that throughout the collective bargaining agreement there is a clear distinction drawn between the terms "leave of absence," "illness," "injury" and "leave due to compensable injury under the Workers' Compensation Act," etc.

Therefore, the arbitrator's conclusion and the basis of his finding that "leave of absence" under Section 17.1 can be applied to *any absence* is totally contrary to the content and intent of the collective bargaining agreement which the arbitrator states is the basis of his decision.

It is true that the role of a reviewing court in claims involving the findings of binding arbitration is extremely limited. R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, and imperfect award, or that the arbitrator exceeded his authority.

Appellate review of arbitration proceedings is confined to an evaluation of the order issued by the court of common pleas pursuant to R.C. Chapter 2711. *Lynch* v. *Halcomb* (1984), 16 Ohio App. 3d 223, 16 OBR 238, 475 N.E. 2d 181; *Lockhart* v. *American Reserve Ins. Co.* (1981), 2 Ohio App. 3d 99, 2 OBR 112, 440 N.E. 2d 1210. The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of *material mistakes* or extensive impropriety. *Id.*

However, an arbitrator's award must draw its essence from the collective bargaining agreement. *Graise* v. *Firestone Tire & Rubber Co.* (1979), 65 Ohio App. 2d 119, 19 O.O. 3d 71, 416 N.E. 2d 633.

An arbitrator who relies upon an inapplicable provision of a collective bargaining agreement exceeds his authority. *Timken Co.* v. *Local Union No. 1123* (C.A. 6, 1973), 482 F. 2d 1012.

Even if there were some way to construe "leave of absence" to include appellant Heinonen's situation, the record does not demonstrate that any of the procedures of Section 17.1 were followed. The specified form was not used, there was no written application, no grant of such a leave and no notice to the union. The record does not demonstrate any evidence to support the arbitrator's theory that a leave of absence was ever sought, obtained or granted in appellant's case.

Finally, the facts are clear and undisputed in the arbitrator's award that the real issue was whether appellant was able to return to work or whether he was still under temporary total disability.

R.C. 4123.56 provides that "[i]n the case of an employer who has elected to pay compensation direct[ly], payments shall be for a duration based upon the medical reports of the *attending* physician. If the employer disputes the attending physician's report, payments may be terminated *only upon application and hearing by a district hearing officer.*" (Emphasis added.)

Public policy would require a reversal of a decision which would allow an employer to force a worker to choose between going back to work or being terminated without the employer's first complying with R.C. 4123.56 *when the dispute is over the employee's ability to return to work.*

This court cannot accept the concept that an arbitrator's award which states that it is not inconsistent with the workers' compensation law can result in a decision contrary to the public policy and purpose of that law.

Appellants' third assignment of error alleges that:

"The court of common pleas erred in denying his [*sic*] motion for summary judgment and granting appellee's motion for summary judgment."

Nowhere in appellants' brief is this issue argued. App. R. 16 requires a brief to contain "* * * the contentions of the appellant with respect to the assignments of error presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."

This court will not disagree with appellee's contention that arbitration findings must be granted great deference by the court. However, in this instance the court feels that the arbitrator exceeded his authority within the meaning of R.C. 2711.10(D) by ignoring both the specific language of

the contract as well as the public policy and purpose of the workers' compensation statutes, in particular R.C. 4123.56.

The judgment of the trial court is therefore reversed and we enter final judgment for appellant.

*Judgment reversed.*

FORD, P.J., concurs.

COOK, J., concurs in judgment only.